IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Monica Ann Miller,<br><br>                    Plaintiffs,<br><br>v.<br><br>James River Insurance Company,<br>Steadfast Insurance Company, Raiser,<br>LLC, and Lyft, Inc.,<br><br>                    Defendants. | C/A No. 3:22-cv-943-JFA<br><br><br>**ORDER** |

This matter is before the court on multiple dispositive motions. Defendants Raiser, LLC ("Raiser") and Lyft, Inc. ("Lyft") have filed Motions to Dismiss (ECF Nos. 48 & 60). Defendants Steadfast Insurance Company and James River Insurance Company have filed Motions for Summary Judgment. (ECF Nos. 59 & 72). For the reasons discussed below, this Court grants the Defendants' respective motions and dismisses this case. Additionally, Defendant Raiser's Motion for an Extension of Time (ECF No. 77) and Plaintiff's Motion for Leave to File a Sur-Reply are denied as moot. (ECF No. 78).

## I.    FACTUAL BACKGROUND

This case arises out of an automobile accident that occurred on December 8, 2017, when Plaintiff Monica Ann Miller's ("Plaintiff") vehicle was struck by another driver, Michael Allen Browning ("Mr. Browning") after he ran a red light. (ECF No. 1-1, p. 3). Plaintiff alleges she suffered injuries as a result of the accident. *Id.*  At the time of the accident, Plaintiff was logged onto both the Uber and Lyft apps as a driver and was

available to receive ride requests. *Id*. at 4. However, Plaintiff had not been matched with a request and was on her way to McDonalds to use the restroom and buy a coffee. *See* (ECF No. 32-4).

On January 31, 2018, Mr. Browning filed a lawsuit against Plaintiff for injuries arising out of the accident. In response, on April 12, 2018, Plaintiff filed an answer asserting certain counterclaims against Mr. Browning for her injuries. *See* (ECF No. 32-2). Subsequently, Plaintiff settled with Mr. Browning for his policy limits of twenty-five thousand dollars ($25,000.00) and a covenant not to execute was signed by the parties. *See* (ECF No. 32-6). Plaintiff also moved for summary judgment against Mr. Browning arguing he caused the accident and was liable for Plaintiff's injuries. *See* (ECF No. 32-7). The Court of Common Pleas in Richland County, South Carolina granted Plaintiff's motion. Finally, on July 14, 2021, a non-jury trial took place which resulted in a verdict for the Plaintiff in the amount of $319,948.67. *See* (ECF No. 32-8).

Thereafter, Plaintiff filed the instant action in the Court of Common Pleas in Richland County on February 14, 2022, against Defendant James River Insurance Company ("Defendant JRIC") and Indian Harbor Insurance Company. *See* (ECF No. 1-1). Defendant JRIC removed the case to this Court on March 22, 2022. *See* (ECF No. 1). On April 8, 2022, Plaintiff filed an Amended Complaint replacing Indian Harbor Insurance Company with Defendant Steadfast Insurance Company ("Defendant Steadfast"). *See* (ECF No. 7). Plaintiff asserted claims against JRIC and Steadfast for declaratory judgment, breach of contract, and bad faith. Plaintiff sought damages in an amount sufficient to recover the judgment she received in state court.

On June 28, 2023, after an Order from this Court, Plaintiff filed a Second Amended Complaint adding Raiser[1] and Lyft as defendants and asserting the following causes of action against them: (1) declaratory judgment; (2) breach of contract; (3) bad faith; (4) negligence and gross negligence; and (5) breach of fiduciary duty. *See* (ECF No. 37). Additionally, Plaintiff has maintained the following causes of action against Defendants JRIC and Steadfast: (1) declaratory judgment; (2) breach of contract; and (3) insurance/bad faith. *Id.*

On August 2, 2023, Defendant Raiser, LLC filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF No. 48). On September 1, 2023, Defendant Steadfast filed a Motion for Summary Judgment. (ECF No. 59). On September 1, 2023, Defendant Lyft, Inc. filed a Motion to Dismiss. (ECF No. 60). These Motions became ripe on September 28, 2023.

On December 5, 2023, this Court heard oral argument at a hearing on the above referenced motions. During the hearing, counsel for Defendant JRIC appeared and requested an oral extension to file a Motion for Summary Judgment on behalf of Defendant JRIC, specifically. This Court granted this request.

On December 5, 2023, Defendant JRIC filed their Motion for Summary Judgment (ECF No. 72), and on January 1, 2024, Plaintiff filed her Response in Opposition. (ECF No. 75). On January 10, 2024, Defendant JRIC filed its Reply (ECF No. 76) making this Motion ripe for review.

---

[1] Raiser is a wholly owned subsidiary of Uber Technologies, Inc.

3

However, included in Plaintiff's Response in Opposition to Defendant JRIC's Motion for Summary Judgment was Plaintiff's own Motion for Summary Judgment. (ECF No. 75). Thereafter, Defendant Raiser filed a Motion for Extension of Time to respond to Plaintiff's Motion for Summary Judgment (ECF No. 77), and Plaintiff filed a Motion for Leave to file a Sur-reply to Defendant Raiser's Response to her Motion for Summary Judgment. (ECF No. 78).

Having been fully briefed, the following Motions are before this Court for review: (1) Defendant Raiser's Motion to Dismiss (ECF No. 48); (2) Defendant Lyft's Motion to Dismiss (ECF No. 60); (3) Defendant Steadfast's Motion for Summary Judgment (ECF No. 59); (4) Defendant JRIC's Motion for Summary Judgment (ECF No. 72); (5) Plaintiff's Motion for Summary Judgment (ECF No. 75); (6) Defendant Raiser's Motion for an Extension of Time to Respond to Plaintiff's Motion for Summary Judgment (ECF No. 77); and (7) Plaintiff's Motion for Leave to File a Sur-Reply to Defendant Raiser's Response to Plaintiff's Motion for Summary Judgment. (ECF No. 78).

This Court will address the Motions in turn.

## II.    LEGAL STANDARD

### a. Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### b. Motion to Dismiss

A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8 of the FRCP, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Atlantic Corp. v. Twombly*, 550 U.S. 544, 580 (2007).

In reviewing the adequacy of a complaint, a court "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The reviewing

court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. According to the U.S. Court of Appeals for the Fourth Circuit, "a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs.*, 7 F.3d at 1134.

## III.    DISCUSSION

As far as this Court can ascertain based on its independent research, this case presents a novel issue regarding the relationship and duties owed between insurance companies, transportation network companies, and individual drivers under South Carolina law. This Court is unaware of any other South Carolina court at any level that has considered the issue presented by Plaintiff's Second Amended Complaint, and the parties have cited to none.

Though Plaintiff asserts many claims against the parties, Plaintiff's case boils down to the lack of underinsured motorist coverage ("UIM") contained in the subject policies issued by Defendants JRIC and Steadfast. Importantly, Defendants JRIC and Steadfast are insurance companies ("insurance company Defendants") who issued policies to Defendants Raiser and Lyft, respectively. Defendants Raiser and Lyft are Transportation Network Companies ("TNC") (collectively referred to as "TNC Defendants") that employ individuals such as Plaintiff as drivers to provide rides for their customers. Plaintiff is considered a TNC driver, and as a driver, she was also considered an "insured" under these respective policies. Thus, Plaintiff argues these policies should be reformed to include UIM

coverage because the insurance company Defendants never offered her the option of such coverage and the TNC Defendants never made her aware of the lack of coverage.

Typically, in cases involving questions of meaningful offers of underinsured motorist coverage, this Court is tasked with answering whether the insurance company's offer can be considered meaningful under South Carolina law. However, this case does not get so far. Uniquely, Plaintiff asks this Court to answer the question of whether Defendants had a duty to offer her underinsured motorist coverage. This Court finds that no such duty exists under South Carolina law.

### a. Defendants Steadfast's and JRIC's Motions for Summary Judgment

This Court begins with Defendants, Steadfast's and JRIC's Motions for Summary Judgment. (ECF Nos. 59 & 72). Plaintiff asserts the following claims against Defendants Steadfast and JRIC: (1) Declaratory Judgment; (2) Breach of Contract; and (3) Insurance/Bad Faith. (ECF No. 37). Defendant Steadfast has also asserted a counterclaim against Plaintiff for Declaratory Judgment.

All of Plaintiff's claims can be boiled down to the lack of underinsured motorist coverage available to her after the subject accident. Plaintiff argues the insurance company Defendants had a duty to offer her underinsured motorist coverage, and they undisputedly breached this duty when they failed to offer her such coverage.[2] *See* (ECF No. 37, p. 10)

---

[2] At the outset, the insurance company Defendants present two arguments in support of their Motions for Summary Judgment: (1) Defendant Steadfast argues it was never properly served and (2) Defendant JRIC argues the policy applicable to this case does not contain UIM coverage. Because this Court finds that the absence of any duty on the insurance company Defendants to offer or provide UIM coverage to Plaintiff forecloses all of Plaintiff's claims in one fell swoop, it is unnecessary for this Court to address whether Defendant Steadfast was properly served or which of Defendant JRIC's policies apply to this case.

("That per S.C. Code Ann. § 38-77-160 (1976, as amended), Defendant Steadfast Insurance Company owed a duty to Plaintiff to make a meaningful offer of underinsured motorist coverage"); *see also id.* at p. 6 ("…Defendant James River Insurance Company owed a duty to Plaintiff to make a meaningful offer of underinsured-motorist coverage."). Thus, the insurance company Defendants' motions for summary judgment pose the same question: did they have a duty or obligation to make a meaningful offer of underinsured motorist coverage to Plaintiff, as an insured under the policy? The insurance company Defendants strenuously argue the answer to this question is, "no." And, because they have no such duty, the insurance company Defendants assert that they are entitled to summary judgment on each of Plaintiff's claims. Although the insurance company Defendants have filed two separate motions for summary judgment, their arguments are sufficiently similar to be addressed together.

As an initial matter, this Court will address the undisputed facts before it. The parties, including Plaintiff, do not dispute that Defendants JRIC and Steadfast are automobile insurers and Defendants Raiser and Lyft are TNCs. Plaintiff, as an employee of Defendants Raiser and Lyft, was a TNC driver and an insured under the applicable policies. Further, and most importantly, the parties do not dispute that Defendants Raiser and Lyft were considered the "named insureds" under the policies and they declined to purchase the optional underinsured motorist coverage.

With these facts in mind, this Court turns to South Carolina law on underinsured motorist coverage. The duties of insurers to offer UIM coverage are encapsulated in § 38-77-350 of the South Carolina Code. Subsection (B) of this statute only requires that a form

8

compliant with subsection (A) be signed by the named insured(s) which in this case are Defendants Lyft and Raiser. Importantly, subsection (B) distinguishes between the named insured and "another insured under the policy…" as it states:

> If this form is properly completed and executed by the **named insured** it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or **another insured under the policy** for the insured's failure to purchase any optional coverage or higher limits.

S.C. Code Ann. § 38-77-350(B) (emphasis added).

The goal of statutory construction is to ascertain and give effect to the legislature's intent. *Jackson v. Charleston County Sch. Dist.,* 316 S.C. 177, 180, 447 S.E.2d 859, 861 (1994). We determine legislative intent primarily through the plain language of the statute. *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 339, 478 S.E.2d 74, 77 (Ct.App.1996). "In construing statutes, the terms used therein must be taken in their ordinary and popular meaning. When such terms are clear and unambiguous, there is no room for construction and courts are required to apply them according to their literal meaning." *Citizens for Lee County, Inc. v. Lee County,* 308 S.C. 23, 28, 416 S.E.2d 641, 644 (1992).

Based on a plain reading of the statute, the insurance company Defendants argue and this Court agrees that it was only required to make a meaningful offer of UIM benefits to its named insureds, Defendants Raiser and Lyft. The Legislature's purposeful use of the term "named insured" in section 38 -77-350(B) demonstrates a legislative intent to require insurers to have the UIM rejection form signed by the person designated as the named insured in the policy and that the form need not be signed by "another insured under the policy…" *See* S.C. Code Ann. § 38-77-350(B). Plaintiff does not attempt to dispute that

Defendant Lyft and Defendant Raiser were the named insureds under the subject policy or that Plaintiff would be considered "another insured under the policy."

Indeed, in *Allstate Ins. Co. v. Estate of Hancock*, the Court of Appeals for South Carolina noted that the insurance statute "repeatedly distinguishes between the terms 'insured' and 'named insured.'" *Allstate Ins. Co. v. Estate of Hancock*, 348 S.C. 81, 86 (S.C. Ct. App. 2001). In *Hancock*, the Court of Appeals considered whether a wife, as an insured under the policy, had the authority to reject UIM coverage on behalf of her husband, the named insured. The Court of Appeals reasoned "the legislature would not have used the term 'named insured' if it intended that any insured under the policy be able to waive UIM coverage." *Id.* at 86-87. Thus, it concluded the Legislature intended that only the named insured could reject UIM coverage. *Id.* at 87 ("…we hold that the form offering UIM coverage on a new policy of automobile insurance must be completed by the named insured who is the applicant.").

The duty that Plaintiff urges this Court to impose—that Defendants Steadfast and JRIC along with other automobile insurers in this state be required to make an offer of UIM coverage to every insured under a given policy—is inconsistent with the wording of § 38-77-350 and unsupported by South Carolina case law. Further, the imposition of such duty would be impractical. Significantly, in *Hancock*, the Court of Appeals concluded that allowing a "mere insured" to reject an offer of UIM coverage would lead "to an absurd result not possibly intended by the legislature." *Id.* The Court of Appeals reached this conclusion regarding a policy insuring two married individuals living in the same household. In this case, Plaintiff seeks to impose a duty upon the insurance company

10

Defendants to offer UIM coverage to every TNC driver in South Carolina. Although not specifically noted in the record, this Court is confident in assuming this number far exceeds the two individuals at issue in *Hancock*. Additionally, it naturally follows that, just as a wife as a mere insured cannot waive UIM coverage, Plaintiff as an insured cannot insist she should have the option to elect such coverage. Thus, this Court refuses to impose a duty upon the insurance company Defendants that would lead to the same absurd result the Court of Appeals in *Hancock* sought to prevent.

Alternatively, Plaintiff argues that as an insured under the policies not privy to the contract between the insurance company Defendants and the TNC Defendants she is a third-party beneficiary and is entitled to seek reformation of the policies to include underinsured motorist coverage.

To begin, the insurance company Defendants argue Plaintiff cannot use the equitable remedy of reformation to include UIM benefits within the policy. "[A]mbiguity or uncertainty has nothing to do with reformation of a written instrument, but rather reformation is adjudged because the instrument, by reason of mistake or fraud, does not embody the true agreement of the parties." S. *Realty & Constr. Co. v. Bryan*, 290 S.C. 302, 309 (Ct. App. 1986) quoting 66 Am.Jur.2d Reformation of Instruments § 6 (1973). The insurance company Defendants correctly argue that Plaintiff cannot seek reformation of the policies because Plaintiff is not alleging a mistake within the policy. Indeed, Plaintiff cannot make this argument because the Defendants, who entered the insurance policy, collectively state the opposite. Defendants agree that the insurance company Defendants made a meaningful offer of underinsured motorist coverage to the TNC Defendants, and

further, that the TNC Defendants declined such coverage. Accordingly, the Defendants agree that the policy is an accurate reflection of their negotiations and mutual understanding.

Instead of arguing a substantive or technical mistake within the policy, Plaintiff seeks reformation of the policy *because UIM coverage was not offered to her*. Thus, the insurance company Defendants assert that Plaintiff is foreclosed from arguing reformation as an equitable remedy. *See Crosby v. Protective Life Ins. Co.*, 293 S.C. 203, 206 (Ct. App. 1987) ("Reformation is a remedy by which writings are rectified to conform to the actual agreement of the parties.").

But Plaintiff, for the first time in her Response in Opposition to Defendant JRIC's Motion for Summary Judgment, argues that the offers of underinsured motorist coverage made by the insurance company Defendants were legally deficient. As such, she asserts she can seek to reform the policy based on the South Carolina Court of Appeals holding in *Ackerman v. Travelers Indemn. Co.*, 318 S.C. 137 (Ct. App. 1995). In *Ackerman*, the South Carolina Court of Appeals held a third-party beneficiary not privy of  insurance policy could reform the policy to include underinsured motorist coverage as a remedy for the insurance company's failure to make a meaningful offer of underinsured motorist coverage to the named insured. The Court of Appeals held that Travelers' offer of underinsured motorist coverage was deficient because the offer did not comply with the four-prong test set forth in *State Farm Mut. Auto Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 (1987).[3] The

---

[3] In *Wannamaker*, the South Carolina Supreme Court established the four criteria an insurer must satisfy for an offer of optional insurance coverage to be considered "meaningful": (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and

12

Court of Appeals described the offer as "vague and general and not sufficiently specific." As such, the Court of Appeals concluded that a "third party not privy to the contract may assert the lack of an adequate offer and reform the contract to increase coverage."

Now, Plaintiff seeks to do the same by arguing the insurance company Defendants' offers to the TNC Defendants were insufficient because (1) the offers were not made to her (ECF No. 75, p. 10) ("The offer made to Defendant Raiser, LLC by Defendant James River Insurance Company was insufficient under South Carolina Statutory Law…because Plaintiff was not informed of the offer or rejection") and (2) the substance of the offers do not satisfy the criteria for a "meaningful offer" as established in *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, 291 S.C. 518 (1987). Because this Court has held that the insurance company Defendants did not have a duty to offer Plaintiff UIM benefits, this Court finds Plaintiff's first argument fails on its face for the reasons stated above.

Turning to Plaintiff's second argument that the offers are legally deficient because they do not comply with the criteria set forth in *Wannamaker*, this Court finds this argument also fails.

In *Wannamaker*, the South Carolina Supreme Court established the four criteria an insurer must satisfy for an offer of optional insurance coverage to be considered "meaningful": (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and

---

not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium. *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, 291 S.C. 518 (1987).

not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium. *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, 291 S.C. 518 (1987).

In response to the *Wannamaker* decision, the South Carolina General Assembly enacted S.C. Code Ann. § 38-77-350 which establishes certain requirements for forms used by insurers in making offers of optional coverages. *See* S.C. Code Ann. § 38-77-350(A)-(B). Section 38-77-350 provides:

> (A)    The director or his designee shall approve a form that automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants. The form, at minimum, must provide for reach optional coverage required to be offered:
>
> (1) A brief and concise explanation of the coverage;
>
> (2) A list of available limits and the range of premiums for the limits;
>
> (3) A space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;
>
> (4) A space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages;
>
> (5) The mailing address and telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

§ 38-77-350(A)(1)-(5).

If the insurer's form complies with these requirements, Section 38-77-350(B) provides a conclusive presumption in favor of the insurer that the insured made a knowing waiver of the option to purchase additional coverages. However, the failure to comply with

Section 38-77-350(A) does not automatically mean the offer was meaningless. Rather, an insurer may still prove the sufficiency of its offer by showing it complied with *Wannamaker*. *See Croft v. Old Republic Ins. Co.*, 365 S.C. 402, 420 (2005) (holding that whether a meaningful offer was made depends on the facts and circumstances of a particular case). Thus, South Carolina's requirement of a meaningful offer can be satisfied in one of two ways: compliance with S.C. Code Ann. § 38-77-350(A) or satisfaction of the four-part test established in *Wannamaker*. The question of whether an insurer met its burden of proving it made a meaningful offer of UIM coverage is a question of fact. *Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253, 261 (2005). Because the rejection forms for Defendant JRIC and Defendant Steadfast are different, this Court must address them separately.

There is no genuine issue of material fact as to whether Defendant Steadfast made a meaningful offer of underinsured motorist coverage to its named insured, Defendant Lyft.[4] Defendant Steadfast attached the UIM rejection form for the policy applicable to the subject accident to its Motion for Summary Judgment. *See* (ECF No. 59-3). Defendant

---

[4] In response to Defendant Steadfast's Motion for Summary Judgment, Plaintiff does not argue that Defendant Steadfast's offer of UIM benefits to Defendant Lyft was legally deficient because of its failure to comply with the statute or the factors established in *Wannamaker*. Instead, Plaintiff has only ever argued that Defendant Steadfast's offer of UIM coverage was deficient because it was not also offered to her. However, in her Response in Opposition to Defendant JRIC's Motion for Summary Judgment, Plaintiff (for the first time) raises the issue of the legal deficiency of Defendant JRIC's offer as noncompliant with the statute or *Wannamaker*. As such, this Court feels that it must address the same as to Defendant Steadfast's offer to provide a comprehensive opinion on the issue. Although Plaintiff has not argued Defendant Steadfast's offer is legally deficient in these ways, this Court finds Plaintiff had the opportunity to make such argument in response to Defendant Steadfast's motion for summary judgment and chose not to. And further, Plaintiff likely could not make such argument in good faith because Defendant Steadfast's offer of additional optional coverage to Defendant Lyft was perfectly compliant with the statute and *Wannamaker* leaving no genuine issue of material fact as to whether the offer could be considered meaningful.

Steadfast's form requires little discussion because it plainly satisfies all the requirements set forth in the statute. The form undisputedly provides a concise explanation of underinsured motorist coverage, a list of available limits and premiums for each option, spaces for the named insured to indicate whether it wishes to accept or reject such coverage, a separate acknowledgement that coverage was offered, and the contact information for the underwriter in the event the named insured develops questions. *See* § 38-77-350(A)(1)-(5). Plaintiff has not argued that Defendant Steadfast's offer was legally deficient based on the requirements of the statute or *Wannamaker*, and such argument would likely be in bad faith due to the form's strict compliance with the statute. Accordingly, this Court finds Plaintiff cannot reform Defendant Steadfast's policy to include underinsured motorist coverage.

The facts surrounding Defendant JRIC's offer of underinsured motorist coverage are less straightforward. At the outset, Plaintiff argues this Court cannot consider Defendant JRIC's UIM rejection form because it was not produced in discovery and as such, it is not "part of the record." *See* (ECF No. 72-1, pp. 109-116). In its Reply, Defendant JRIC acknowledges that the wrong UIM rejection form ("Exhibit D-2018 Rejection Form") (ECF No. 72-1, pp. 109-116) was attached to its Motion for Summary Judgment and inadvertently produced in discovery on February 14, 2023, Bates labeled 000094-000100. However, Defendant JRIC explains that the correct form ("Exhibit C-2016 Rejection Form") was also attached to its Motion as an exhibit to the affidavit of Brian Benbow, a Risk Manager of Insurance Strategy & Operations for Uber Technologies, Inc. *See* (ECF No. 72-1, pp. 101-108 ("Exhibit C-2016 UIM Rejection Form")). To date, this Court has not received a motion to strike or been presented with an argument that the form is not

what it purports to be. Because the correct form was attached to the instant Motion, this Court will consider it as part of the record for purposes of summary judgment. Importantly, this Court also finds Plaintiff will have suffered little to no prejudice by this Court's consideration of the correct form because it is identical to the incorrect form used to form the basis of Plaintiff's argument. Thus, this Court will consider the correct form, Exhibit C-2016 Rejection Form, as a part of the record for purposes of summary judgment.

As one last failsafe before getting to the substance of the form, Plaintiff argues that the form is inapplicable because it covers the wrong policy period. The accident occurred on <u>December 8, 2017,</u> and Defendant JRIC's UIM rejection form covers the policy periods from March 1, 2016, to March 1, 2017, and March 1, 2018, to March 1, 2019. *Id.* Defendant JRIC explains that the 2016 Rejection Form applies to the 2017-2018 policy period at issue because the corresponding "200 policy was a renewal policy as indicated by the policy number, CA 436200SC-**02**." *See* (ECF No. 76, p. 10) (Defendant JRIC's Reply) ("As indicated by the policy number…specifically the "**-02**" suffix, the '200 policy was a renewal policy and the 2016 UIM Rejection Form applies to the 2017-2018 policy period at issue.") (emphasis in original); see also *Government Employees Ins. Co. v. Draine*, 389 S.C. 586, 592 (Ct. App. 2010) (holding insurance company not required to make new offer of UIM coverage when policy is renewed) citing S.C. Code Ann. § 38-77-350(c) ("[a]n automobile *insurer is not required* to make a new offer of coverage on any automobile insurance policy which renews, extends, changes, supersedes, or replaces an existing policy.") (emphasis added). Finding Defendant JRIC is correct that the form may

apply to the policy period at issue because it is a renewal policy, this Court concludes that Exhibit C-2016 Reject Form is the correct form.

Thus, this Court will consider whether Defendant JRIC conveyed a meaningful offer of UIM coverage to Defendant Raiser based on Exhibit C-2016 Rejection Form included as an exhibit to Mr. Brian Benbow's affidavit attached to the instant Motion. (ECF No. 72-1, pp. 101-08). In the instant Motion, Defendant JRIC concedes that the form does not comply with the statutory requirements for a meaningful offer because it does not include the corresponding premiums for each of the limits offered. *See* (ECF No. 72, p. 17); see also § 38-77-350(A)(2) (requiring a "list of available limits and the range of premiums for the limits…"). Plaintiff hammers the form's failure to comply with the statute as she argues the form did not include: (1) disclosure of the amount of increased premium costs for the purchase of additional UIM coverage; (2) a list of available limits and the range of premiums for the limits; (3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of the coverage he desires; and (4) a space for the insured to sign the form which it acknowledges that s/he has been offered the optional coverages. Despite these deficiencies,  Defendant JRIC asserts that their offer can still be considered meaningful under *Wannamaker*.

For ease of reference, *Wannamaker* established a four part test for determining whether an insurer had complied with its duty to offer optional coverage: (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature

of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium. *Wannamaker*, 291 S.C. at 521.

This Court finds Defendant JRIC's form easily satisfies these elements. First, the offer (contained within the form) is in writing, and the form is titled, "South Carolina Offer of Additional Uninsured Motorists Coverage and Optional Underinsured Motorist Coverage." On page 5 of 7 of the form, Defendant JRIC specifies the limits of optional coverage available for purchase demonstrated below:

**C. Offer Of Underinsured Motorist Coverage**

**1. Split Limits**

Your insurance policy does not provide any Underinsured Motorists Coverage. If you select optional underinsured motorist coverage, an additional premium will be charged. The schedules below indicate the premium charges for minimum and increased limits.

| Split Limits Bodily Injury | Amount Of Increased Premium |
|---|---|
| $25,000/$50,000 | $ |
| $50,000/$100,000 | $ |
| $100,000/$200,000 | $ |
| $100,000/$300,000 | $ |
| $250,000/$500,000 | $ |
| $300,000/$300,000 | $ |
| $500,000/$500,000 | $ |
| $500,000/$1,000,000 | $ |
| $1,000,000/$1,000,000 | $ |
| $ | $ |

| Split Limits Property Damage | Amount Of Increased Premium |
|---|---|
| $25,000 | $ |
| $50,000 | $ |
| $100,000 | $ |
| $200,000 | $ |
| $300,000 | $ |
| $500,000 | $ |
| $1,000,000 | $ |
| $ | $ |

Further, the snapshot of the form above shows Defendant JRIC satisfied the requirement of informing the named insured that the optional coverage comes with a price. Specifically, the form states that the optional coverage is available for "an additional premium." (ECF

No. 72, p. 106). Finally, Defendant JRIC also satisfies the requirement of informing the named insured of the nature of the optional coverage as it explains:

> Underinsured motorist coverage compensates you, or other persons insured under your automobile insurance policy for amounts which you legally may be entitled to collect as damages from an owner or operator of an at-fault underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle which is covered by some form of liability insurance which is insufficient to fully compensate you for your damages.

> Your automobile insurance policy does not automatically provide any underinsured motorist coverage. However, you have the right to buy, and your insurance company the right to offer, optional underinsured motorist coverage in various limits up to the limits of liability coverage you have purchased.

(ECF No. 72, pp. 102-103).

These statements are sufficient to "give an intelligible explanation of underinsured motorist coverage" such that the named insured "[could] make an informed decision to accept or reject the additional coverage." *Dewart v. State Farm Mut. Auto. Ins. Co.*, 396 S.C. 150 (1988). Put simply, this Court finds the above language contains the "necessary information" that must be conveyed in a format "that make it readily understandable to a person of common intelligence." *Id.*

Accordingly, this Court finds that Defendant JRIC's offer form unambiguously and intelligibly advised Defendant Raiser of the nature of UIM coverage. The purpose of the meaningful offer requirement is to protect insureds by ensuring that they make informed decisions with respect to the coverages they choose to purchase. Here, Defendant Raiser is a knowledgeable and highly sophisticated business entity that is responsible for purchasing insurance coverage in all fifty states. Based on Defendant Raiser's level of sophistication

combined with the thoroughness of the subject offer of coverage form, this Court finds there is no genuine issue of material fact as to whether named insured, Defendant Raiser, understood and knowingly rejected the option of underinsured motorist coverage.

Therefore, Plaintiff may not reform Defendant JRIC's policy with Defendant Raiser to include underinsured motorist coverage.

After a thorough review of the parties' briefs on the insurance company Defendants' motions, the applicable law, and the undisputed facts of this case, this Court makes two findings: (1) as a matter of law, the insurance company Defendants did not have a duty to offer underinsured motorist coverage to Plaintiff directly because she was not the named insured on the applicable policies and (2) there is no genuine issue of material fact as to whether the insurance company Defendants made meaningful offers of underinsured motorist coverage to their named insureds which precludes Plaintiff from seeking to reform the policies to include such coverage. Because this Court makes these findings, this Court must grant their Motions for Summary Judgment.[5] By granting their Motions, this Court dismisses Plaintiff's claims against Defendants JRIC and Steadfast.

### b. Defendants Raiser and Lyft's Motions to Dismiss

Plaintiff's Second Amended Complaint presents this Court with a similar but distinct question from the one presented above regarding the insurance company Defendants. As to the TNC Defendants, the Plaintiff's Second Amended Complaint asks whether a rideshare company as a named insured on a policy can decline UIM coverage

---

[5] As a result of this ruling, this Court denies as moot Plaintiff's Motion for Leave to file a Sur-Reply to Defendant JRIC's Motion for Summary Judgment. (ECF No. 78).

which may affect its employees or fail to offer such coverage to its employee. Based on Defendants Raiser's and Lyft's decisions to reject UIM coverage on their policies with the insurance company Defendants, Plaintiff has asserted five causes of action against each of them. Specifically, Plaintiff asserts the following claims against the TNC Defendants: (1) Declaratory Judgment; (2) Breach of Contract; (3) Insurance/Bad Faith; (4) Negligence/Gross Negligence; and (5) Breach of Fiduciary Duty. To be clear, Plaintiff's claims hinge on the TNC Defendants' rejection of UIM coverage and/or failure to offer her the option of such coverage. Because this Court ultimately finds that the TNC Defendants had every right to decline such coverage as the named insured on the policies with the insurance company Defendants, and further, that the TNC Defendants did not have to offer Plaintiff such coverage prior to rejecting it, Plaintiff's causes of action fail to state a claim upon which relief can be granted. Thus, Plaintiff's claims against the TNC Defendants must be dismissed.

To begin, Defendants Raiser and Lyft are transportation network companies, not insurance companies. The TNC Act defines a TNC as a company which "uses a digital network, platform, or internet-enabled application to connect a passenger to a transportation network driver for the purpose of providing transportation for compensation using a vehicle." S.C. Code § 58-23-1610(1). South Carolina law defines an insurance company as "a corporation….engaging or proposing or attempting to engage as principals in any kind of insurance or surety business, including the exchanging of reciprocal or interinsurance contracts between individuals, partnerships, and corporations." S.C. Code § 38-1-20(33). In South Carolina, TNCs are governed by S.C. Code § 58-23-1610 *et seq.*

(the "TNC Act"); *See also* S.C. Code § 58-23-1710 ("Except as otherwise provided in this chapter, TNC's and TNC drivers are governed exclusively by this article and by any regulations promulgated by the office of Regulatory Staff consistent with this article.").

Within the TNC Act, the South Carolina Legislature has been highly specific regarding the insurance coverage required to be procured and maintained by TNCs. At the time of the accident in this case, Plaintiff was logged onto the applications for Uber (Raiser) and Lyft and was available to receive a ride request but was not engaged in a prearranged ride. In situations like this one, the TNC Act requires the following coverage: (1) Primary automobile liability insurance in the amount of at least fifty thousand dollars for death and bodily injury, per person, at least one hundred thousand dollars for death and bodily injury per incident, and at least fifty thousand dollars for property damage and (2) Uninsured motorist coverage as required by Section 38-7715. *See* S.C. Code §§ 58-23-1630(B)(1)—(2). Additionally, the statute states these coverage requirements may be satisfied by "automobile insurance maintained by the TNC driver…, the TNC, or both." S.C. Code § 58-23-1630(B)(3).

Although Plaintiff does not dispute these Defendants' status as TNCs, she seeks to impose duties upon them that are in direct contradiction with their status as TNCs as defined within the TNC act. For instance, Plaintiff asserts claims for breach of contract and insurance/bad faith against the TNC Defendants. In her breach of contract claim, Plaintiff alleges Defendants Lyft and Raiser "provided Plaintiff an insurance policy…in which [the TNC Defendants were] to offer insurance coverage, and [they] did not offer underinsured motorist coverage to Plaintiff." (ECF No. 37, pp. 14-15 & 19). Further, in her

insurance/bad faith cause of action, Plaintiff asserts "[TNC Defendants] provided Plaintiff with a binding contract for insurance coverage….[TNC Defendants] acted and continue[ ] to act in bad faith and breach the covenant of good faith and good dealing by failing to properly pay for covered losses, damages and injuries under the policy…(ECF No. 37, pp. 16-17 & 21).

But as TNCs, Defendants Raiser and Lyft  did not and could not have offered Plaintiff an insurance policy or underinsured motorist coverage. They had no policy or coverage to provide. *See Triem v. State Farm Fire and Casualty Company*, Case No. 3:21-cv-00710-MO, 2021 WL 5921371, at *3 (D. Or. Dec. 15, 2021) (holding claim against Lyft which sought "declaratory judgment that" plaintiff was "entitled to coverage from Defendant[ ] Lyft" implausible because "Lyft is the insured, not an insurance company and therefore does not provide insurance coverage").

Further, Plaintiff's claims are belied by the TNC Act which is unmistakably clear as to the coverage it requires the TNCs and TNC drivers to *purchase* and maintain. This makes sense considering the TNC Act defines the TNC Defendants as transportation network companies, and not insurance companies capable of creating and implementing their own policies to offer to their employees. Notably, the plain language of the TNC Act also defeats Plaintiff's main argument that the TNC Defendants had a duty to offer her UIM coverage because the TNC Act does not require TNCs to maintain underinsured motorist coverage. This also makes common sense considering underinsured motorist coverage is optional in South Carolina. Thus, if the Legislature intended for the TNCs to offer or maintain such coverage, it would have said so. *See* S.C. Code § 58-23-1630(B)(1)

& (2). Thus, Defendants Raiser and Lyft never offered Plaintiff an insurance policy or UIM coverage because they had no ability to do so. Plaintiff's claims contained within the Second Amended Complaint for breach of contract and insurance/bad faith fail on their face. Seemingly, Plaintiff's argument would end here, but it does not.

Instead, Plaintiff argues that Defendants Raiser and Lyft created their own duty to inform Plaintiff that they declined UIM coverage on her behalf. Plaintiff argues that this is a common law duty but does not cite to any South Carolina case law in support of that argument. In a convoluted attempt to support her argument, Plaintiff cites to S.C. Code § 58-23-1635(A) which requires TNCs to inform their drivers in writing of the "insurance coverage including type of coverage and limits for each coverage that the TNC provides while the TNC driver uses a personal vehicle in connection with the TNC digital network." S.C. Code § 58-23-1635(A). And, for the first time in her Response in Opposition to the TNC Defendants' Motions to Dismiss, Plaintiff alleges the TNC Defendants failed to inform her of this information. *See* (ECF No. 54, p. 10) (Plaintiff's Response in Opposition to Defendant Raiser's Motion to Dismiss) ("Plaintiff alleges that Defendant Raiser did not provide such information [S.C. § 58-23-1635(A) disclosure requirements] in writing"); See (ECF No. 65, p. 7) (Plaintiff's Response in Opposition to Defendant Lyft's Motion to Dismiss) ("Plaintiff alleges negligence/gross negligence in failing to properly inform her of coverage on her in case of wreck and thus the common law duty to inform her"). Nowhere within the Second Amended Complaint does Plaintiff mention, reference, or cite to the TNC Act, let alone, this specific statutory requirement. Rather, Plaintiff alleges:

- Raiser and Lyft "owed the Plaintiff a duty, as an independent contractor, to inform the Plaintiff of the lack of any coverage for her own injuries from an automobile accident." (ECF No. 37, pp. 4-5).

- Raiser and Lyft "had a duty to inform the Plaintiff of their actions, including any refusals as to underinsured motorist coverage, as part of their coverages that were provided to all independent contractors." *Id.*

- Raiser and Lyft "owed a duty to Plaintiff to make a meaningful offer of underinsured-motorist coverage." *Id.* at 13, 18.

- Raiser and Lyft were negligence, grossly negligent, wanton, willful, and reckless…by "failing to provide information to the Plaintiff as to the availability of any underinsured motorist coverage for her, as is required by South Carolina law…" *Id.* at 17, 22.

These statements are insufficient to amount to an allegation that the TNC Defendants failed to comply with S.C. Code 58-23-1635(A). Further, S.C. Code 58-23-1635(A) clearly does not require the TNC Defendants to disclose the "lack of any coverage." If the Legislature intended for TNCs to disclose their "actions including any refusals as to underinsured motorist coverage" to their drivers, it would have said so. (ECF No. 37, pp. 4-5 ). But it did not, and this Court refuses to read language into the statute that does not exist. The duty Plaintiff seeks to impose on the TNC Defendants, much like the duty she seeks to impose on the insurance company defendants, has no basis in South Carolina law. The only "duties" imposed on the TNC Defendants are contained within the TNC Act and are not alleged to have been breached within Plaintiff's Second Amended Complaint.

Additionally, Plaintiff's claims for breach of fiduciary duty and negligence/gross negligence against the TNC Defendants fail for similar reasons. Plaintiff alleges the TNC Defendants were negligent in "failing to provide information to Plaintiff as to the

availability of any underinsured motorist coverage..." and "….failing to provider her, as an independent contractor, underinsured motorist coverage…" (ECF No. 37, pp. 17 & 22). Once again, Plaintiff's negligence/gross negligence claim hinges on the imposition of a duty. Upon finding no duty exists, Plaintiff's claim for negligence/gross negligence must fail because Plaintiff cannot satisfy the first element for her claim.

Finally, as to Plaintiff's claim for breach of fiduciary duty, Plaintiff alleges the TNC Defendants breached their "fiduciary duty" by "failing to keep the Plaintiff fully informed as to the availability and/or lack of underinsured motorist coverage." (ECF No. 37, pp. 17-18 & 22-23). The courts in South Carolina have found that a fiduciary relationship exists when "…one reposes special confidence in another so that the latter, in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confident." *SSI Medical Services, Inc. v. Cox*, 301 S.C. 493 (1990). For example, fiduciary relationships have been found to exist in the following circumstances: an agent holding power of attorney, a broker, an attorney, partners, corporate promoters, officers and directors of a corporation in relation to shareholders, an escrow agent, and a bank in relation to its depositors in certain circumstances. The imposition of fiduciary duties has traditionally been reserved for legal or business settings. Significantly, courts have declined to find a fiduciary relationship between insured and insurers and employers and employees. *See Pitts v. Jackson Nat. Life Ins. Co.,* 352 S.C. 319 (Ct. App. 2002); *see also McClurkin v. Champion Labs., Inc.*, 2011 U.S. Dist. LEXIS 129006 (D.S.C. Nov. 8, 2011).

Here, Plaintiff alleges she is an independent contractor of the TNC Defendants. If courts have declined to find such a fiduciary relationship exists between employers and

their employees, it logically follows that a South Carolina court would not extend such a special status to the even more attenuated relationship of an employer and independent contractor. Nonetheless, Plaintiff does not articulate any facts to support a claim that the TNC Defendants owed her a fiduciary duty. The fiduciary duty that Plaintiff alleges the TNC Defendants breached echoes her previous claims regarding their failure to offer or inform her of underinsured motorist coverage. Because this Court has found no duty exists, Plaintiff's claim for a breach of fiduciary duty fails on all fronts.

In sum, even construing all allegations as true and in favor of Plaintiff as required when considering a motion to dismiss, Plaintiff's causes of action against the TNC Defendants fail to state claims upon which relief could be granted. Plaintiff's Second Amended Complaint asks this Court to find a duty where none exists in South Carolina statutory or common law. The TNC Defendants did not owe Plaintiff any duty let alone a duty to inform her of their insurance coverage decisions or offer her coverage where none was available. Thus, this Court is constrained to grant Defendants' motions and dismiss Plaintiff's claims against the TNC Defendants.

### c. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ADDITIONAL DISCOVERY

In response to Defendant JRIC's Motion for Summary Judgment, Plaintiff also moves for summary judgment. (ECF No. 75, p. 7). Plaintiff's Motion for Summary Judgment must be denied because it is based on Defendant JRIC's alleged lack of a meaningful offer of underinsured motorist coverage. As this Court has previously found, there is no genuine issue of material fact as to whether the insurance company Defendants

meaningfully conveyed an offer of UIM benefits to the TNC Defendants. Further, there is no genuine issue of material fact as to whether the TNC Defendants understood this offer, and knowingly rejected it. Thus, Plaintiff's argument in support of her Motion for Summary Judgment fails.

In the alternative, Plaintiff has also requested additional time to conduct discovery. However, this Court finds there are no additional facts to be gained by further discovery that would change this Court's ruling as to the lack of duty owed to Plaintiff by the Defendants regarding underinsured motorist coverage.

Thus, Plaintiff's Motion for Summary Judgment, or in the alternative, for additional discovery is denied. (ECF No. 75).

## IV.     CONCLUSION

For the foregoing reasons, this Court grants Defendants Raiser's and Lyft's Motions to dismiss (ECF Nos. 48 & 60) and grants Defendants Steadfast's and JRIC's Motion for Summary Judgment. (ECF Nos. 59 & 72). Because this Court grants Defendant Steadfast's Motion for Summary Judgment and finds that Defendant Steadfast did not owe Plaintiff a duty to offer or provide UIM coverage, it is unnecessary for this Court to consider Defendant Steadfast's counterclaim for declaratory judgment seeking the same relief. Thus, it is denied without prejudice. (ECF No. 42). Additionally, this Court denies as moot Defendant Raiser's Motion for Extension of Time (ECF No. 77) and Motion for Leave to File a Sur-Reply (ECF No. 78). Accordingly, this case is dismissed with prejudice.

**IT IS SO ORDERED.**

January 24, 2024                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                  United States District Judge